**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

**MAURICE GUTIERREZ,**

        **Plaintiff,**

**v.**                                                                               **Civ. No. 99-887 JP/DJS**

**THE CITY OF ALAMOGORDO,**
**a Municipal corporation, ALFONSO**
**"AL" C. HERNANDEZ, a City**
**Commissioner for the City of**
**Alamogordo, in his individual**
**capacity, and ROBERT STOCKWELL,**
**former City Manager for the City**
**of Alamogordo, in his Individual**
**Capacity,**

        **Defendants**.

**<u>MEMORANDUM OPINION AND ORDER</u>**

On May 11, 2000, Defendants filed a Motion for Summary Judgment (Doc. No. 27)

under Fed. R. Civ. P. 56.  After carefully considering the law, the pleadings, and the briefs, I

conclude that Defendants' motion should be granted.

## I.      BACKGROUND

Plaintiff worked as the Finance Director for the City of Almagordo.  In his capacity as

finance director for the city, in June of 1996, Plaintiff recommended that his subordinate, Ms.

Kathy Grant ("Ms. Grant") be terminated after he became aware of a falsified travel voucher.[1]

Although Plaintiff was urged by his superiors to either withdraw his recommendation that Ms.

Grant be terminated or to suggest a lessor punishment, Plaintiff maintained his position.

Plaintiff's recommendation for termination was supported and upheld by Defendant Stockwell,

the city manager.  On or about July 12, 1996, Stockwell requested that Grant submit her

resignation.  As a result of Plaintiff's recommendation to terminate Ms. Grant, Plaintiff claims that

she and her boyfriend Jeff Crain, ("Crain") conspired to 'get even' with the Plaintiff.

On the same day as Ms. Grant's disciplinary hearing, Crain met with Defendant Stockwell.

Crain informed Stockwell that he had previously worked for Mesa Verde, a landscaping company.

Crain alleged that Plaintiff had accepted free gravel and landscaping work done to his residential

property in exchange for Plaintiff giving preferential payment treatment to Mesa Verde.  This

---

[1] Plaintiff sent Ms. Grant to Orlando, Florida to attend a conference.  Ms. Grant told
Plaintiff that she wanted to leave for Florida a few days early to visit Disneyworld with her
children.  Plaintiff approved of Ms. Grant leaving a few days early, but told her she could not
receive per diem pay for the days prior to the conference.  Plaintiff instructed Ms. Grant to submit
a vacation time slip for the days prior to the conference.  After Plaintiff signed Ms. Grant's per
diem request for the days of the conference, she altered the voucher to include the days prior to
the conference and submitted the voucher to the accounting department.  Once Ms. Grant left for
Florida, personnel from the accounting department brought to the attention of Plaintiff the fact
that Ms. Grant had falsified her per diem voucher.  Plaintiff informed the Assistant Manager of the
falsification and he in turn informed Defendant Stockwell, the city manager.  Stockwell ordered
that Ms. Grant return from Orlando immediately.

work was done by Crain and Defendant Hernandez.[2] Crain accused Plaintiff of never requesting a

bill for the work, and both parties agree that to this day Plaintiff has not paid for services

rendered.  After Crain disclosed to Stockwell what had transpired between himself, Hernandez,

and Plaintiff, Stockwell told Crain that accepting bribes from Plaintiff was a felony.  Crain then

went to Hernandez and informed him of what had happened.

Hernandez, after he became a city commissioner, went to the chief of Police, Truman Nix

("Nix") after learning of the possible felony charges of bribery.  Plaintiff contends that Hernandez

turned to Nix, not in his official capacity as a police officer, but as Herndandez' friend.  Plaintiff

further alleges that Hernandez knowingly reported to Nix false allegations that Plaintiff had taken

bribes from Mesa Verde.[3]   Plaintiff argues that Hernandez "knowingly withheld crucial

information [from Nix] that showed that no bribes occurred."[4] (Pl.'s Resp. to Defs.' Mot. for

Summ. J. at 16.)  Nix reported the allegations of bribery to the District Attorney's office and an

investigation ensued.  Once the criminal investigation of Plaintiff began, Defendant Stockwell

requested Plaintiff's resignation.  Plaintiff submitted his letter of resignation, effective August 14,

1996.

On August 15, 1996, a newspaper article reported that Plaintiff had submitted his letter of

---

[2] Defendant Hernandez worked for Mesa Verde along with Crain.  Plaintiff says that
Hernandez and Crain performed the work not in their official capacity as employees of Mesa
Verde, but on their own time as personal favors to Plaintiff based on their friendship.  Hernandez
subsequently took the position of city commissioner.

[3] Plaintiff argues that Hernandez knowingly told Nix false information in retaliation for
Plaintiff's recommendation to terminate Ms. Grant.

[4] Defendant Hernandez later testified in Grand Jury Proceedings in State of New Mexico
v. Jeff Crain, Maurice Gutierrez, and Mesa Verde Enterprises, Inc. that he had no expectation of
payment for the services he and Crain performed for Plaintiff.

3

resignation.  In this same article, it was reported that the District Attorney's office was targeting

an unnamed individual in the city's financial department for allegations concerning possible

inappropriate acceptances of gratuities in return for more favorable considerations.[5]  Although the

article did not specifically name Plaintiff, he contends that because his resignation was published

in conjunction with general allegations of bribery they were linked together and Stockwell "did

nothing to prevent" this from occurring.  (Pl.'s Resp. to Defs.' Mot. for Summ. J. at 17.)  One

year later, Plaintiff was exonerated of all charges of bribery.

Plaintiff brings claims under 28 U.S.C. § 1983 for violations of the First and Fourteenth

Amendments.  Plaintiff claims his First Amendment right to free speech was violated because he

was forced to resign after recommending the termination of Grant.  As a result of this termination,

Hernandez, Grant's friend, retaliated against Plaintiff by reporting damaging defamatory

allegations against Plaintiff regarding his acceptance of bribes.[6]  Plaintiff argues that his speech

was a matter of public concern since it was in response to the misuse of public funds by Grant.

In support of his Fourteenth Amendment Due Process Liberty Interest claim against

Defendant Hernandez, Plaintiff alleges that Hernandez publically disseminated or intentionally

---

[5] The article states: "Maurice Gutierrez, who had been the city's chief finance officer since October 1, 1992, turned in a letter of resignation yesterday.  'The letter says he's resigning effective August 14,' said City Manager Bob Stockwell.  'That's all it says.'  According to a news release made today by District Attorney Bert Atkins, the 12th Judicial District Attorney's Office has targeted an individual in the city's financial department for allegations concerning that individual's 'possible inappropriate acceptance of a gratuity in return for more favorable considerations from the City of Alamogordo's Financial Department.' (Def's. Exhibit 15.)

[6] In Plaintiff's response to Defendants' Motion for Summary Judgment, Plaintiff conceded that there was no issue of material fact with respect to his First Amendment claim against Stockwell.  Defendant Hernandez is the only Defendant against whom Plaintiff now asserts a First Amendment claim.

4

caused the public dissemination of false stigmatizing information by reporting to his friend, Nix, the false allegations of bribery.  For his liberty interest claim against Stockwell, Plaintiff alleges that Stockwell permitted his announcement of Plaintiff's resignation to be published together with the District Attorney's announcement that the District Attorney's office was investigating an individual in the city's financial department for possible inappropriate acceptance of bribes.  As a result of the information being released together, Plaintiff's resignation was inextricably linked with the allegations of bribery.  Plaintiff is seeking, inter alia, (1) compensatory damages against Defendants jointly and severally, (2) punitive damages, and (3) equitable relief in the form of reinstatement.

Defendants contend that Plaintiff did not engage in protected speech when recommending the termination of Ms. Grant, and that Defendants did not publish any false, stigmatizing statements regarding Plaintiff's alleged criminal behavior.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed R. Civ. P. 56(c).  "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."  Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990).   The party moving for summary judgment bears the burden of  "'showing'--that is, pointing out to the district court-- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Only then does the burden shift to the nonmovant to come forward with evidence showing that there is a genuine issue of material fact.  See Bacchus Indus. Inc. v. Arvin

5

Indus. Inc., 939 F.2d 887, 891 (10th Cir. 1991).  The nonmoving party may not avoid summary

judgment by resting upon the mere allegations or denials of his or her pleadings, *id*., and must

present more than a mere scintilla of evidence in order to overcome a motion for summary

judgment.  See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 251 (1986).  At the summary

judgment stage, the court is not permitted to weigh the credibility of witnesses.  See Hirase-Doi v.

U.S. West Communications Inc., 61 F. 366d 777, 785 n.4 (10th Cir. 1995).

## III.   ANALYSIS

### A.   PLAINTIFF'S FIRST AMENDMENT CLAIMS

At the pre-trail conference held on July 27, 2000, in a bench ruling, I granted Defendants'

Motion for Summary Judgment as to Plaintiff's First Amendment claims against both Hernandez

and Stockwell.  Plaintiff, at the pre-trail conference as well as in his response to Defendants'

Motion for Summary Judgment, conceded that there was no issue of material fact as to his First

Amendment claim against Stockwell.  In regard to Plaintiff's First Amendment claim against

Hernandez  I found that Plaintiff was speaking merely as an employee on personnel matters, not

upon matters of public concern, when he recommended termination of Ms. Grant's employment.

See Connick v. Myers, 461 U.S. 138, 147 (1983);  Pickering v. Board of Education, 391 U.S.

563 (1968); Clinger v. New Mexico Highlands Univ., No. 99-2017, 2000 WL 799796 (10th Cir.

June 22, 2000); Conaway v. Smith, 853 F.2d 789, 796 (10th Cir. 1988); Koch v. Hutchinson, 847

F.2d 1436, 1445-46 (10th Cir. 1988).

### B.   PLAINTIFF'S FOURTEENTH AMENDMENT DUE PROCESS CLAIMS

To succeed on a Fourteenth Amendment Due Process Claim for a deprivation of a liberty

interest, a plaintiff must establish four elements: (1) the statements must impugn the good name, reputation, honor and integrity of the employee, (2) the statements must be false, (3) the statements must occur in the course of terminating the employee or must foreclose other employment opportunities, and (4) the statements must be published.  Watson v. University of Utah Mes. Cent., 75 F.3d 569, 579 (10th Cir. 1996).  These four elements are conjunctive; all must be satisfied to demonstrate deprivation of the liberty interest.  Workman v. Jordan, 32 F.3d 475, 481 (10th Cir. 1994).  If a plaintiff meets these requirements, he is entitled to have a hearing to clear his name.  Id. at 480.

Public statements are not stigmatizing, as a matter of law, unless the statements have the potential to damage plaintiff's standing or association in the community and his freedom to take advantage of future employment opportunities.  See Southwest Kan. Community Action Program Inc. v. Secretary of Agric. of U.S., 967 F.2d 1452, 1458 (10th Cir. 1992); Melton v. City of Okla.,928 F.2d 920, 927 (10th Cir. 1991).  Absent a further interest, a claim asserting stigmatization and reputational damage does not rise to a constitutional level and is best pursued under state tort law.  Siegert v. Gilley, 500 U.S. 226, 234 (1991).

Also during the pre-trail conference, I dismissed Plaintiff's liberty interest claim against Defendant Stockwell, holding that Stockwell did not publish any false information.  Plaintiff argues that Stockwell released a press statement of Plaintiff's resignation, but did nothing to prevent this statement from being published in conjunction with the District Attorney's general allegations of bribery.  This case is on point with Russillo v. Scarborough, 935 F.2d 1167 (10th Cir. 1991).

In Russillo, the plaintiff worked as a court administrator for the New Mexico Metropolitan

Court.  While employed, the New Mexico Supreme Court initiated an investigation of accounting irregularities at the Metropolitan Court.  The plaintiff was placed on administrative leave pending a court investigation.  Plaintiff was reinstated when the investigation ended.  Four months later, approximately $28,000 was stolen from the accounting department of the Metropolitan Court.  The plaintiff submitted his resignation, which was rejected.  A few days later, the plaintiff's employment was terminated on the order of Judge Jewell.  The reason given for the termination was  "lax procedures plaguing the Metropolitan Court administrative" office which reflected poorly on the state judiciary.  Plaintiff was not accused of stealing the money.  Russillo at 1167.  The plaintiff filed suit for wrongful termination, claiming, inter alia, that his liberty interest in his good name and reputation had been violated because he was terminated shortly after $28,000 had been stolen from the court, which, because of the publicity accompanying the two events, implied he was guilty of wrongdoing.

The Tenth Circuit Court of Appeals found that no false statements were made.  The court noted that (1) the plaintiff was never charged with stealing the funds, (2) any impression that the plaintiff was fired for financial wrongdoing was created by the newspaper's juxtaposition of that information with news about missing funds, and (3) although the article may have implied that the plaintiff was fired for mismanagement, it did not suggest he actually stole the money.  The court concluded that because defendants did not disseminate any false and stigmatizing charges against the plaintiff, they did not violate plaintiff's liberty interest.  Id. at 1172 (emphasis added).

In this case, Defendant Stockwell did not make any false statements.  Additionally, Stockwell did not name Plaintiff as the individual under investigation for possible inappropriate acceptance of gratuities.  Any impression that might have been created was not because of

8

Stockwell's statement but rather because the newspaper chose to run both stories together.

This leaves Plaintiff's liberty interest claim against Defendant Hernandez. Here, Plaintiff claims that Hernandez spoke with chief of police, Nix, "not in Nix's capacity as a police officer, but as Hernandez' friend." (Pl's. Resp. to Defs.' Mot. for Summ. J. at 16 (emphasis in original).) Plaintiff argues that during the course of this conversation Hernandez intentionally disclosed false information regarding the allegations of bribery against Plaintiff, which he knew, or should have known would be publically disseminated.

Plaintiff's liberty interest claim fails because Plaintiff did not meet an essential element, publication. Publication, in the context of a liberty interest claim is accorded the meaning "to be made public." Harrison v. Board of Comm'rs, 775 F. Supp. 365, 367 (D. Colo. 1991) (quoting Bishop v. Wood, 426 U.S. 341, 348 (1976)). The Tenth Circuit has held that "intra-government dissemination . . . falls short of the Supreme Court's notion of publication: 'to be made public.'" Asbill v. Housing Auth. of Choctaw Nation of Okla., 726 F.2d 1499, 1503 (10th Cir. 1984) (quoting Bishop 426 U.S. 341, 348).   In this case, Hernandez, a city commissioner, spoke with Nix, the chief of police, who then spoke with the attorney general, also a government agency. Where all conversations were among governmental agencies, and there were no publications of the information beyond governmental channels, plaintiff "cannot show a deprivation of a liberty interest." Durham v. Stegman, No. 93-1425-MLB, 1994 WL 326757 *4 (D. Kan. June 22, 1994). Furthermore, only stigmatizing statements that are publically made implicate a liberty interest claim. See Diehl v. Albany County School Dist. No. 1, 694 F. Supp. 1534, 1536 (D. Wyo. 1988) By Plaintiff's own admission, conversations between Hernandez and Nix were not public but rather were discussions between friends. (Pl.'s Resp. to Defs.' Mot. for Summ. J. at

9

16.)

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment is
GRANTED.  A separate Summary Judgment will be entered concurrently with entry of this
Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE